UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY EDWARD COOK,<br>XYTOS, INC. CLERK'S ENTRY OF DEFAULT ENTERED 10/8/2014,<br>ASIA EQUITIES, INC. CLERK'S ENTRY OF DEFAULT ENTERED 10/8/2014,<br><br>Defendants. | ) | No. 1:13-cv-01312-SEB-MKK |

**ORDER ON REPORT AND RECOMMENDATION**

This matter is before us on Plaintiff Securities and Exchange Commission's ("SEC" or "Plaintiff") Motion to Enforce Judgment Through Contempt Proceedings against Defendant Timothy Edward Cook ("Mr. Cook" or "Defendant"). [Dkt. 123]. This motion was referred to Magistrate Judge Klump for initial consideration. On September 28, 2026, Magistrate Judge Klump issued her Report and Recommendation, recommending that we grant the SEC's Motion and hold Mr. Cook in civil contempt of the Court's Final Judgment, which was entered more than ten years ago on March 2, 2016. [Dkt. 167]. Also before the Court is Mr. Cook's Objection to the Magistrate Judge's Report and Recommendation. [Dkt. 168]. For the reasons stated below, we **OVERRULE** Mr. Cook's object and **ADOPT** the Magistrate Judge's Report and Recommendation.

## BACKGROUND

### I. Prior Litigation

On August 19, 2013, the SEC brought this civil case against Mr. Cook for allegedly fraudulently selling shares of a sham company, Xytos, Inc. ("Xytos"), retaining half of the shares through his alter ego, Asia Equities, Inc. ("Asia Equities"), and fraudulently misleading investors. Dkt. 1. Xytos and Asia Equities were named as co-Defendants. *Id.*

Two years later, on August 24, 2015, we granted the SEC's Motion for Summary Judgment as to liability. Dkt. 97. Nearly six months later, on March 2, 2016, the Court contemporaneously imposed a civil penalty of $150,000 against Mr. Cook and entered final judgment against all Defendants (the "Final Judgment"). Dkts. 105, 106. The Final Judgment entered against Defendants included a monetary judgment (the "Monetary Judgment") requiring Defendants to pay the SEC a total of $792,828, and a permanent injunction (the "Permanent Injunction"). Dkt. 106.

The Monetary Judgment required Defendants to pay the monetary judgment in full within fourteen days of the order, with post judgment interest to accrue on any outstanding amount after the fourteen days elapsed. Dkt. 106 at 1–2. As of the date of this order, an outstanding balance on the unpaid Monetary Judgment remains due and owing. Dkt. 159 at 1, ¶ 1.

The Permanent Injunction imposed two restrictions relevant here. First, the Permanent Injunction prohibited Mr. Cook from selling unregistered shares in interstate commerce, unless the sale of said shares fell into an applicable exemption, in violation of Section Five of the Securities Act (hereinafter "Section Five Injunction"). Dkt. 106 at 3–4. Second, Mr. Cook was prohibited from engaging in the sale of penny stock (i.e., shares that are less than $5 per share) (hereinafter "Penny Stock Bar"). *Id.* at 4.

## II. Current Motion

The SEC alleges that during the intervening years between the issuance of the Court's prior order and the date of its motion, Mr. Cook remained involved in the investment industry. In 2020, he participated in a reverse merger which resulted in the creation of Newpoint Financial Corp. ("Newpoint Financial"). Dkt. 162; dkt. 166-9 at 6–7. Newpoint Financial's CEO, Keith Beekmeyer ("Mr. Beekmeyer"), authorized Mr. Cook to contact Newpoint Financial's transfer agent, Integral Transfer Agency ("Integral"), regarding Newpoint Financial's shareholder list and to add shareholders to said list. Cook Dep. 84:2–12, dkt. 165. Dkt. 166-6 at 6.

Thereafter, Mr. Beekmeyer allocated approximately 2 to 2.5 million shares of Newpoint Financial stock to Mr. Cook as reimbursement for a prior investment Mr. Cook had made to one of Mr. Beechmeyer's businesses. Cook Dep. 47:11–25, dkt. 163 at 47. In March 2021, Mr. Cook directed Integral to transfer some of his shares to approximately one hundred individuals. Cook Dep. 48:13–22, dkt. 163 at 48. Of those 100+ shares, Mr. Cook directed a portion to be allocated to Xytos shareholders to compensate them for losses incurred in a previous business venture. Cook Dep. 10:12–24, dkt. 165 at 10. Mr. Cook valued the stock at fifty cents a share. Cook Dep. 49:3–24, dkt. 163 at 49.

Mr. Cook did not dispose of all of his shares. The parties have stipulated that "[b]etween at least August 2019 and April 2022, while Mr. Cook [resided] in Indiana, [he] sold Newpoint shares for 50 cents per share to individuals located in Illinois, Florida, and Michigan, who [in return] sent checks or wires to California to pay for the shares." Dkt. 159 at 2, ¶ 3. The Newpoint shares Mr. Cook allocated and sold were not subject to an effective registration requirement. *Id.* at 1, ¶ 2.

On August 5, 2024, the SEC moved to Enforce Judgment through Contempt Proceedings, arguing that Mr. Cook, in addition to not paying any part of the Monetary Judgment entered eight years prior, had violated the Section Five Injunction and the Penny Stock Bar. Dkt. 123. Four days thereafter, Mr. Cook filed a Response, in which he denied any noncompliance with the Court's Final Judgment. Dkt. 124. After settlement negotiations proved unsuccessful, the undersigned Judge referred this matter to Magistrate Judge Klump, who conducted an evidentiary hearing on Plaintiff's Motion to Enforce. Dkt. 161.

On September 28, 2026, Magistrate Judge Klump issued her Report and Recommendation, recommending that Plaintiff's Motion to Enforce Judgment be granted due to Mr. Cook's failure to pay any portion of the Monetary Judgment, his violation of the Section Five Injunction, and his violation of the Penny Stock Bar. Dkt. 167.

Mr. Cook timely filed his objections to the Magistrate Judge's Report and Recommendation, contending that: (1) he should not be held in contempt, because he lacks the funds to satisfy the Monetary Judgment; (2) he did not violate the Section Five Injunction, because his alleged activity falls within an applicable exemption to Section Five; and (3) he did not violate the Penny Stock Bar, because the true value of the Newpoint Financial shares exceeded five dollars a share. Dkt. 168. On October 19, 2026, the SEC responded in opposition to Mr. Cook's objection. Dkt. 171. Mr. Cook has not replied to the SEC response, and the time for doing so has passed. Mr. Cook's objection now awaits our ruling.

## LEGAL STANDARD

A district judge is authorized to refer dispositive motions to a magistrate judge under Federal Rule of Civil Procedure 72(b). When a party objects to specific elements of a magistrate judge's report and recommendation, the district court conducts a *de novo* review to determine for

itself whether the Magistrate Judge's decision was supported by substantial evidence or, rather, was the result of an error of law. Fed. R. Civ. P. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009). We have followed those requirements in conducting this review.

## DISCUSSION

Defendant objects to the Magistrate Judge's Report and Recommendation on the following three grounds: (1) he is unable to pay the final judgment issued against him, (2) he is not an "underwriter" and therefore falls into an exemption under Section Five, and (3), because he allocated and sold the Newpoint Financial shares at a discount he did not violate the Penny Stock Bar. We address each argument below.

### I. Ability to Pay Final Judgment

Mr. Cook concedes that he has failed to make any payments towards the Monetary Judgment, but maintains that his inability to pay constitutes a valid defense. Dkt. 168 at 2. Specifically, Mr. Cook avers that he cannot satisfy the Monetary Judgment because he has been unable to generate funds through traditional financing options. As the Magistrate Judge found, for the reasons explained below, Mr. Cook's argument is unavailing.

"Civil contempt is coercive in nature, and consequently there is no justification for confining on a civil contempt theory a person who lacks the present ability to comply." *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 251 (1972) (citing *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948)). As noted by the Magistrate Judge, "[i]nability to pay is a valid defense in a contempt proceeding,

but the party raising the defense has the burden of proving its inability to pay." *In re Res. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). Where, as here, the party has failed to pay any amount, the party must "establish[ ] 'clearly, *plainly*, and *unmistakably*' that 'compliance is impossible.' " *Id.* at 387 (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995)) (emphasis in original).

Mr. Cook has not paid any portion of the monetary judgment. Thus, he bears the burden of demonstrating "clearly, plainly, and unmistakably" that compliance with the monetary judgment is "impossible." *Id.* (emphasis removed). According to Mr. Cook, although he (admittedly) has not paid any of the Monetary Judgment, the fact that he gave shares to Xytos shareholders demonstrates an effort on his part to satisfy the Court's Judgment. Dkt. 124 at 2. Mr. Cook's argument is legally and factually a non-starter. The Monetary Judgment unambiguously requires Mr. Cook to pay the amount owing to the SEC, not to Xytos or any other party. Dkt. 106 at 1 ("Defendants shall pay to *Plaintiff* . . . .") (emphasis added). By attempting to reimburse Xytos investors, Mr. Cook has nonetheless entirely defaulted on the terms of the Monetary Judgment.

Furthermore, the evidence before the Court does not establish that compliance was impossible. To the contrary, this evidence reveals that Mr. Cook has had assets available to him, and, instead of applying them to satisfy his obligation to the SEC, he chose to reimburse Xytos investors. "It is well-settled that if a court finds that a defendant could at some time in the past have complied with a court order, the court should presume a present ability to comply and impose on the alleged contemner the burden of producing evidence to establish present inability." *U.S. ex rel. Thom v. Jenkins*, 760 F.2d 736, 739–40 (7th Cir. 1985) (citations omitted).

Mr. Cook further argues that, due to the size of the monetary judgment, he is unable to secure traditional financing, i.e., through a loan, to allow him to pay. While this situation may tend to support Mr. Cook's argument that he is unable to satisfy the full judgment, it does not establish that it is *impossible* for him to pay any amount of the judgment. Nor has he adduced any evidence to support this argument. *See Bailey v. Roob*, 567 F.3d 930, 934 (7th Cir. 2009) ("[A] defendant in a contempt proceeding bears the burden of producing evidence if he is asserting a present inability to comply with the terms of a court order.") (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). Mr. Cook offers to supplement the record with a proffer of his current financial status. However, the time to present such evidence was at the evidentiary hearing before the Magistrate Judge, not after the issuance of the Report and Recommendation. *See U.S. v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) (finding that the failure to raise arguments in front of the Magistrate Judge results in the underdevelopment of facts, prejudice to the opposing party, and undermines "the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them").

Mr. Cook's final two grounds to establish his inability to pay, to wit, that he is unable to pay the amount due to his wife's cancer diagnosis and the foreclosure of his home, were not raised before of the Magistrate Judge and thus are deemed waived. *See Melgar*, 227 F.3d at 1040 ("Our cases, however, indicate that arguments not made before a magistrate judge are normally waived.") (citation omitted). Mr. Cook had a full opportunity to develop these arguments during the hearing before the Magistrate Judge but instead has chosen to raise them for the first time in the context of these objections to the Report and Recommendation. That is too late. Accordingly, we overrule Defendant's first objection to the Magistrate Judge's ruling and recommendation, finding it correct and compelling in all respects.

## II. Section Five Injunction

Mr. Cook next contends that by selling unregistered shares of Newpoint Financial stock in interstate commerce he did not violate the Section Five Injunction, because he comes within an applicable exemption to 15 U.S.C. § 77e.[1] Under the Securities Act of 1933 ("Securities Act"), "any person [who] sells a non-exempt security to any other person . . . must . . . register[ ] [the sale] unless an exemption can be found for the transaction." 17 C.F.R. § 230.144, *preliminary note*. Under the terms of the Section Five Injunction, Mr. Cook continues to be permanently enjoined from, either directly or indirectly, participating in the sale of unregistered shares through interstate commerce. Dkt. 106 at 3–4. Section 4(1) of the Securities Act, 15 U.S.C. § 77d(1), provides an exemption to Section Five's registration requirement "for transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(1). Under Section 2(a)(11), an "underwriter" is defined as "any person who has purchased from an issuer[2] with a view to . . . the distribution of any security." 15 U.S.C. § 77b(a)(11). Mr. Cook's theory here is that he was exempt from Section Five's registration requirement because he did not qualify as an "underwriter" within the meaning of the Securities Act. Dkt. 168 at 3–4.

In her Report and Recommendation, the Magistrate Judge found that the SEC had established a *prima facie* case of noncompliance by Mr. Cook through the parties' factual stipulation that Mr. Cook had sold unregistered Newpoint Financial shares through interstate commerce. Dkt. 167 at 20. The Magistrate Judge further found that Mr. Cook was an underwriter and therefore was not exempt from Section Five's registration requirement. *Id.* at 22–23. Mr.

---

[1] Our injunction makes clear that Mr. Cook is "permanently restrained and enjoined from violating Section 5 of the Securities Act . . . in the absence of any applicable exemption . . . ." Dkt. 106 at 3–4.

[2] An "issuer" is defined as anyone "who issues or proposes to issue any security . . . ." 15 U.S.C. § 77b(a)(4).

Cook objects to the Magistrate Judge's finding that he was an underwriter on the grounds that the Newpoint shares he distributed were not "purchased from an issuer with a view to offer or sell for an issuer." Dkt. 168 at 4 (quoting 15 U.S.C. § 77b(a)(11)). Specifically, Mr. Cook maintains that, since he did not purchase the stocks but received them as reimbursement for a prior investment, he did not "purchase[ ] from an issuer" and therefore does not come within the definition of "underwriter" as given in Section 2(a)(11). *Id.*

The Seventh Circuit has adopted a more expansive view of how an "underwriter" is defined, in contrast to the view advanced by Mr. Cook here. *See, e.g.*, *SEC v. Van Horn*, 371 F.2d 181, 188 (7th Cir. 1966) ("[T]he statutory definition [of underwriter, contained in Section 2(a)(11)] specifically covers every person who participates in a distribution of securities."). *See also SEC v. Holschuh*, 694 F.2d 130, 139 n.13 (7th Cir. 1982) (noting that the court's conclusion in *Van Horn* "suggests that the term 'underwriter' is broad enough to encompass all persons who engage in steps necessary to the distribution of securities"). Therefore, the fact that Mr. Cook did not "purchase" the shares he subsequently allocated and sold is not dispositive of this issue.

Under Seventh Circuit precedent, underwriters include those individuals "who might operate as conduits for the transfer of securities to the public." *Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989). Here, the evidence adduced by the SEC establishes that Mr. Cook clearly acted with "a view toward distribution." 15 U.S.C. § 77b(11). In his deposition, Mr. Cook expressly acknowledged that some of the individuals who received the Newpoint Stock would then sell it. Dkt. 164 at 9 ("[Y]ou know some of them would probably dump the stock as quickly as they possibly could."). Mr. Cook testified further that his goal was for Newpoint Financial to become eligible for NASDAQ, and his purpose in distributing his shares in order to increase the number of shareholders and shares of Newpoint Financial stock was to achieve this status. Cook

Dep. 94:5–23, dkt. 163 at 94. On that basis, the Magistrate Judge found that Mr. Cook was an underwriter, given that he had allocated his shares through his communications with Newpoint Financial's transfer agent, and that he did so with the understanding that those individuals to whom the shares had been distributed would likely re-sell their shares to the public. Dkt. 167 at 22. We find the Magistrate Judge's analysis on this point correct, well-reasoned and supported by the facts as well as the law.

The remainder of Mr. Cook's arguments in this objection are largely undeveloped. To the extent Mr. Cook attempts to invoke Rule 144's safe harbor, his argument fails. Rule 144, 17 C.F.R. § 230.144, provides a "safe harbor" "for insiders . . . who want to sell their own stock without registration . . . ." *S.E.C. v. McNamee*, 481 F.3d 451, 455 (7th Cir. 2007). In his objection, Mr. Cook argues that he held the shares for over one year, thereby indicating that he did not intend to resell the shares. Dkt. 168 at 4. While not explicitly included in his objection, it seems clear that Mr. Cook is attempting to invoke Rule 144's safe harbor, one of the requirements of which is that the shares be held for at least a year. However, we are spared the necessity of resolving the merits of Mr. Cook's argument, because he failed to develop his Rule 144 safe harbor argument during the Magistrate Judge's hearing and thus has waived this argument. Accordingly, we overrule Mr. Cook's second objection.

## III. Penny Stock Bar

In our Final Judgment against Mr. Cook, we permanently enjoined him from "participating in an offering of penny stock . . . ." Dkt. 106 at 4. A "penny stock" is defined as an equity security with a price of less than five dollars a share. *Id.* (citing 17 C.F.R. § 240.3a51-1). Here, Mr. Cook objects to the Magistrate Judge's finding that he violated the Penny Stock Bar by selling Newpoint Financial shares at a price of fifty cents per share on the grounds that he

distributed the stock at a "discount," and the true value of the stock exceeded five dollars per share. Dkt. 168 at 5. In his objection, Mr. Cook simply states that he "has provided evidence that Newpoint Financial's historic share price was $5.00/per share." Dkt. 168 at 5. However, Mr. Cook has not pointed us to anywhere in the record that he provided such evidence, nor has our review of the record revealed any evidence produced by Mr. Cook in support of this contention other than his own testimony. We therefore overrule Mr. Cook's objection and adopt the Magistrate Judge's recommendation finding him in violation of the Penny Stock Bar.

## CONCLUSION

For all these reasons, we hereby **OVERRULE** Defendant's objections and **ADOPT** the recommendations contained in the Magistrate Judge's Report and Recommendation regarding Plaintiff's Motion to Enforce Judgment. Dkt. 167. Accordingly, Plaintiff's Motion to Enforce Judgment is **GRANTED**. Dkt. 123. We hereby **FIND** Mr. Cook in **civil contempt** of the Monetary Judgment, the Section Five Injunction, and the Penny Stock Bar.

Mr. Cook is therefore **ORDERED** to pay in full the Monetary Judgment no later than **December 31, 2026**. If Mr. Cook fails to pay the full Monetary Judgment by December 31, 2026, Plaintiff is **DIRECTED** to notify the Court of Mr. Cook's default by **January 14, 2027**.

Mr. Cook is **ORDERED** to comply with all provisions of the court's Final Judgment. Dkt. 106. Should Mr. Cook continue to fail to comply with the Court's Final Judgment, he will face further sanctions, such as additional monetary sanctions, incarceration, or criminal contempt proceedings.

IT IS SO ORDERED.

Date: 11/20/2026

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

XYTOS, INC.
2015 West 96th Street
Indianapolis, IN 46260

ASIA EQUITIES, INC.
2015 West 96th Street
Indianapolis, IN 46260

John E. Birkenheier
SECURITIES AND EXCHANGE COMMISSION
birkenheierj@sec.gov

Rua Murrin Kelly
Securities & Exchange Commission
kellyru@sec.gov

Jonathan T Menitove
Securities and Exchange Commission
menitovej@sec.gov

Eric M. Phillips
U.S. SECURITIES AND EXCHANGE COMMISSION - Chicago
phillipse@sec.gov

Terry Wayne Tolliver
Brattain Minnix Tolliver
terry@bmtindy.com